IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

F. KENNETH EICHWALD,
As parent and next friend of Isaiah
Eichwald, a Minor,

      Plaintiff,

vs.                                          No. CV-07-00784 JCH/RHS

JACK GRIFFITH, individually and in his
Official Capacity as Principal of Cuba High
School, Cuba Independent Schools,

DALE HOOPER, Individually and in his
Official Capacity as Football Coach, Cuba
High School, Cuba Independent Schools,

PAT GALLEGOS, in his Official Capacity as
Chairman of the Cuba Independent Schools
Board of Education,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Griffith and Hooper's Motion to Dismiss, filed December 17, 2007 [Doc. 11], and Defendant Gallegos' Motion to Dismiss, filed January 28, 2008 [Doc. 20]. The Court having considered the motions, memoranda, and relevant law, and being otherwise fully informed, finds that these Motions to Dismiss are well taken and will be granted.

### I.  BACKGROUND

On August 15, 2007, Plaintiff's Amended Complaint for Civil Rights Violations Under Color of State Law was filed as Exhibit A to Defendant Gallegos' Notice of Removal from the

1

Thirteenth Judicial District Court. The Amended Complaint alleges that Defendants violated both the First Amendment and the Equal Protection clause of the Fourteenth Amendment by directing certain adverse actions at Plaintiff's son, Isaiah Eichwald ("Isaiah"),on whose behalf Plaintiff brings this action, because of the protected speech of Plaintiff.

More specifically, Plaintiff alleges that as a result of his own expressions of concern about the background of a candidate for the position of Head Basketball Coach for the Cuba High School, the Head Football Coach at Cuba High School, Defendant Hooper, became hostile towards Isaiah, decreased his on-the-field time at football games, and ordered him to throw a long pass while he was still "cold, causing serious injury to Isaiah's shoulder. Also purportedly as a result of Plaintiff's protected speech, Plaintiff alleges that Defendant Griffith "picked a fight" with Isaiah, demanded that he remove a baseball hat that he was wearing at a sporting event in Cuba High School gymnasium, falsely accused him of physically accosting him, ordered that he not be allowed to play in the championship basketball game, and directed that he be suspended from school. With regard to Defendant Gallegos, Chairman of the School Board, Plaintiff alleges that Defendant Gallegos "allowed" and "sanctioned" the actions taken against Isaiah in retaliation for Plaintiff's protected speech.

In Count II of the Amended Complaint, Plaintiff alleges with generality that adverse actions taken against Isaiah by Defendants were without adequate justification and directed solely at Isaiah in violation of the Equal Protection clause of the Fourteenth Amendment.

## II. LEGAL STANDARDS

### A. Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any

pleading. Fed. R. Civ. P. 12(b)(6). A court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993). A motion to dismiss should be granted if, viewing the well-pleaded factual allegations of the complaint as true, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1968-69 (2007). In considering a Rule 12(b)(6) motion, a court must assume all well-pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991); *Maher v. Durango Metals, Inc.*,144 F.3d 1302, 1304 (10th Cir. 1998).

The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will prevail ultimately, but whether a plaintiff is entitled to offer evidence to support his or her claim. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that [the plaintiff] has not alleged or that the defendants have violated the . . . laws in ways that [the plaintiff has not] alleged." *See Associated Gen. Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The rules also do not require a court to accept legal conclusions or unwarranted inferences. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted).

**B. Qualified Immunity**

The standard for analyzing motions to dismiss shifts slightly in the context of a defendant's assertion of qualified immunity to a suit under 42 U.S.C. Section 1983. Qualified immunity effectively bars Section 1983 suits against defendants in their individual capacities. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The qualified immunity defense was

created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). It provides defendants not only with immunity from liability but also with immunity from suit. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Once a defendant raises the defense of qualified immunity on a motion to dismiss, a plaintiff has the burden 1) to assert facts which, if true, would constitute a violation of a constitutional right, and 2) to demonstrate that the "right was clearly established so that [a] reasonable official[] in [the] defendant['s] situation would have understood [his or her] conduct violated that right." *Liebson v. New Mexico Corr. Dep't*, 73 F.3d 274, 276 (10th Cir. 2001). A plaintiff's burden is quite heavy, and he must do more than simply allege the violation of a general legal precept. *Jantz v. Muci*, 976 F.2d 623, 627 (10th Cir. 1992). Further, a right is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right is as the plaintiff maintains. *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002).

## III.  DISCUSSION

In their Motions to Dismiss, Defendants argue that the Court should dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim as well as on qualified immunity grounds. First, Defendants contend that the Court should dismiss Plaintiff's First Amendment claim, as Plaintiff, suing solely on behalf of his son and not on his own behalf, has no standing to assert a claim that his son was injured because of Plaintiff's own allegedly protected speech. Second, Defendants contend that the Court should dismiss Plaintiff's Equal Protection claim because the Amended Complaint does not contain allegations sufficient to state such a claim. Third, Defendants argue that the Court should dismiss Plaintiff's Section 1983

claims, both the First Amendment claim and the Equal Protection claim, because Defendants are entitled to qualified immunity from suit. Finally, Defendants note that Plaintiff's third count, for punitive damages, should be dismissed upon the dismissal of the underlying substantive claims. The Court will address each of these arguments in turn.

**A.  Count I:  First Amendment Claim**

Defendant Gallegos and Defendants Griffith and Hooper move to dismiss Plaintiffs' First Amendment claim, arguing that Plaintiff, suing solely on behalf of his son, lacks standing to vindicate retaliatory actions taken against his son which are premised on only Plaintiff's speech.

Defendant's arguments can be characterized either as assertions that Plaintiff lacks standing or assertions that Plaintiff has failed to state a claim. On the one hand, the standing doctrine embraces judicially self-imposed limits on the exercise of federal jurisdiction, including the general prohibition on a plaintiff's raising another person's legal rights. *Allen v. Wright*, 468 U.S. 737, 750-51 (1984). On the other hand, in order to state a First Amendment claim for retaliation, a plaintiff must allege 1) that he engaged in activity protected by the First Amendment; 2) that the actions directed at the plaintiff by the defendant caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) that the defendant's actions were motivated by the protected activity. *See, e.g., Shero v. City of Grove, Oklahoma*, 510 F.3d 1196, 1203 (10th Cir. 2007). Thus, in order to both maintain standing and to state a claim for First Amendment retaliation, a plaintiff must allege that he engaged in activity protect by the First Amendment and that he suffered adverse actions motivated by such activity.

Specifically, Defendants allege that Plaintiff's allegations are deficient with regard to standing and with regard to the first prong of the First Amendment retaliation standard, that

5

plaintiff engaged in protected activity. The Court agrees. Whether cast as a lack of standing or failure to state a cause of action, Plaintiff simply cannot, suing solely on his son's behalf, recover for adverse actions taken against his son but based only on Plaintiff's own protected speech.[1]

The Tenth Circuit decision in *Dohaish v. Tooley*, 670 F.2d 934 (10th Cir. 1982) provides some guidance, albeit in a different legal context under slightly altered facts. There the Court determined that discrimination actions brought pursuant to Section 1983 did not accrue to a victim's father, reasoning that such actions are "personal suit[s]." *Dohaish*, 670 F.2d at 936. Admittedly, *Dohaish* can be distinguished from the present matter in that the plaintiff there was attempting to recover for actions taken solely against his son, while here Isaiah is attempting to recover for actions taken against himself but premised on the protected activities of his father. Essentially, the plaintiff in *Dohaish* failed to allege that he suffered adverse actions directed at him (prong two above), where Plaintiff here has failed to allege that Isaiah engaged in protected activity (prong one above). But the principle that a victim's Section 1983 claims do not accrue to a family member holds true.

More to the point, Judge Browning of this Court determined in *Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.*, 377 F. Supp. 2d 994 (2005) that the plaintiff lacked standing to bring a Section 1983 First Amendment retaliation claim on the basis of the protected activity of a family member. *Id.* at 1016. Simply put, a plaintiff may invoke First Amendment speech protections only with regard to his *own* speech.

In *Trujillo*, the plaintiff was employed by Albuquerque Public Schools ("APS"). *Id.* at 1000. His wife applied for a position with APS but was not hired. *Id.* In response, plaintiff's

---

[1] Plaintiff, F. Kenneth Eichwald, brings this action against Defendants as the "parent and next friend" of his minor son Isaiah Eichwald. Plaintiff readily admits that although he brings this action on behalf of Isaiah, "it was not Isaiah's individual speech that inspired the retaliation of the defendants, but the protected speech of his father." [Doc. 16, at 5]; [Doc. 21, at 4.]

wife filed an Equal Employment Opportunity Commission ("EEOC") complaint and plaintiff openly supported her throughout the EEOC process. *Id.* Sometime after APS hired another applicant for the position that his wife sought, plaintiff's wife sent a letter to APS alleging that the hiree was not qualified for the position. *Id.* at 1001. The plaintiff then sued APS claiming that he was retaliated against on the basis of his wife's EEOC charge and the letter that his wife sent to APS regarding the hiree's qualifications. *Id.* The Court ultimately determined that the wife's protected activity did not provide adequate standing for the plaintiff to bring a First Amendment retaliation action. *Id.* at 1014, 1016.

*Trujillo*'s First Amendment standing rule has withstood a long and complicated procedural history. First, nearly five months after entering its initial opinion in *Trujillo*, the Court withdrew its summary judgment for the defendants, in part because the plaintiff's "motions to reconsider . . . add[ed] his own speech" to some of his First Amendment retaliation claims. *Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.*, 470 F. Supp. 2d 1270, 1276 (D.N.M. 2005). Reconsidering it prior decision, the Court reasoned that because the plaintiff added allegations "that his own speech is at issue . . . [he] has standing to allege a First Amendment retaliation claim on his speech." *Id.* at 1278. With regard to a separate First Amendment retaliation claim, however, the plaintiff failed to allege that his own speech was at issue, and the Court consequently affirmed its summary judgment in favor of defendants in that regard. *Id.* at 1277 (denying plaintiff's request to amend its decision related to an EEOC charge filed by his wife). Although it withdrew summary judgment for the defendants on several claims, the Court reiterated the holding that a plaintiff lacks standing to bring a First Amendment retaliation claim based on another's protected speech. *Id.* at 1276-77.

Then, while an appeal of *Trujillo* was pending before the Tenth Circuit, the United States

Supreme Court decided *Garcetti v. Caballos*, 547 U.S. 410 (2006), which modified prior First Amendment jurisprudence in the area of speech by public employees. *Id.* Because the *Garcetti* decision had potential implications for the First Amendment analysis in *Trujillo*, the Tenth Circuit remanded *Trujillo* for further findings of fact. *Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.*, No. 05-2305, 2007 WL 80698, at *3 (10th Cir. Jan. 12, 2007). Finally, the district court reviewed the *Trujillo* decision again in light of *Garcetti* and in light of new facts but did not change its original holding regarding First Amendment standing. *Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.*, Nos. CIV 02-1146 JB/LFG, CIV 03-1185 JB/LFG, 2007 WL 2461629 (D.N.M. June 5, 2007). Thus, despite *Trujillo*'s extensive procedural history, the First Amendment standing rule articulated in the Court's initial decision has not been undermined. *Compare Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.*, 377 F. Supp. 2d 994 (2005) *with Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.*, Nos. CIV 02-1146 JB/LFG, CIV 03-1185 JB/LFG, 2007 WL 2461629 (D.N.M. June 5, 2007).

In addition, this Court finds persuasive, the holdings of the Second Circuit and the Southern District of New York in *Morris v. Lindau*, 196 F.3d 102, 113 (2d Cir. 1999) and *Martinez v. City of New York*, No. 00 Civ. 7914 (WHP), 2003 WL 2006619, at *4 (S.D.N.Y. April 30, 2003). In *Morris*, the plaintiff argued that he was denied an interview for a position with the police department because of his father's speech and that he had standing to assert the First Amendment rights of his father. *Morris*, 196 F.3d at 113. The Second Circuit determined that the plaintiff in fact lacked standing to maintain his action, as one generally may not claim standing to vindicate the First Amendment rights of another. *Id.* Similarly, in *Martinez*, the plaintiff asserted that she had a viable First Amendment retaliation claim because her mother made complaints on her behalf. *Martinez*, 2003 WL 2006619, at *4. The court, however,

determined that the First Amendment rights of the plaintiff's mother were not transferable to her through an agency relationship and that she therefore lacked standing to maintain her First Amendment claim. *Id.*

In the "Preliminary Observation" portion of Plaintiff's Response to Defendant Gallegos' Motions to Dismiss, Plaintiff suggests that "courts have recognized that retaliation against family members is actionable, and implicates the rights of the individual that exercised his or her First Amendment rights, as well as the individual against whom retaliation is practiced." [Doc. 21, at 2.] Yet Plaintiff fails to reference any case law establishing that a plaintiff may vindicate First Amendment retaliation based on another's protected speech. In fact, the holding of *Trujillo* is directly contrary to Plaintiff's position. Plaintiff offers no other legal support for a protected speech First Amendment claim premised on another's speech.[2] Consequently, such action must be dismissed.

Perhaps in an attempt to de-emphasize his deficient protected speech claim, Plaintiff suggests in both of his responses to Defendants' motions that "Isaiah was, in essence, punished because of his association with his father . . . ." [Doc. 16, at 5]; [Doc. 21, at 4.] He cites *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192 (10th Cir. 2007) for the proposition that certain associational First Amendment claims are so closely related to protected speech First Amendment claims "as to make distinction between the two impossible or impractical." [Doc. 16, at 5]; [Doc. 21, at 4.] This is apparently Plaintiff's attempt to transform

---

[2] If Plaintiff was bringing this action on his own behalf, alleging that the adverse actions taken against his son were aimed at chilling *his* speech, it might be a closer case. Indeed, other courts have under some circumstances determined that a plaintiff has standing to bring a First Amendment retaliation claim where the defendant took adverse action against her spouse due to the plaintiff's protected speech. *See, e.g., Belt v. Marion Comm. Unity Sch. Dist. No. 2*, No. 05-4132-JPG, 2006 WL 839434 (S.D. Ill. March 28, 2006). However, here the Amended Complaint is brought solely on behalf of Plaintiff's son, Isaiah. As such, the rule established in *Trujillo* governs and Plaintiff is without standing.

Isaiah's protected speech First Amendment claim into an associational First Amendment claim, although Plaintiff clearly pled the action as a protected speech First Amendment claim. [Ex. A to Doc. 1, at 7] ("Count I:  First Amendment Retaliation (Protected Speech)).  Moreover, Plaintiff's reliance on *Brammer-Hoelter* is misplaced.

The factual circumstances were no doubt unique in *Brammer-Hoelter*.  In that case, the plaintiffs associated for the purpose of discussing the very speech that supported their protected speech claim.  *Brammer-Hoelter*, 492 F.3d at 1209.  They asserted both freedom of speech and freedom of association retaliation claims against the defendants.  *Id.*  Determining that it was unnecessary to remand the associational claim left unaddressed by the trial court's opinion, the Tenth Circuit reasoned that "although the freedom of speech and freedom of association retaliation claims remain independent, their analysis is effectively indistinguishable." *Id.*  This does not change the fact that protected speech and protected association retaliation claims remain distinct actions.  *See Shrum v. City of Coweta*, 449 F.3d 1132, 1138 (10th Cir. 2006) (distinguishing between freedom of speech and freedom of association retaliation claims).

Even if Plaintiff had afforded some notice to Defendants that he was asserting an associational First Amendment claim, which he did not, the factual allegations contained in Plaintiff's complaint do not support such a claim.  For example, in order to state a First Amendment familial association claim, a plaintiff must allege that the defendant had the specific intent to interfere with the familial relationship.  *Vigil v. South Valley Acad.*, No. 06-2309, 2007 WL 2693868, at *3 (10th Cir. Sept. 12, 2007).  Plaintiff simply has not alleged or even alluded to any intent by Defendants to interfere with Isaiah's relationship with his father.  Similarly, Plaintiff has failed to allege sufficient facts to demonstrate that Isaiah was associating with his father in the advancement of beliefs and ideas or with regard to his father's decision to express

concerns about the hiring of Jerry Zapata, the candidate for the position of Head Basketball Coach. In fact, there is no allegation that Isaiah was even aware that his father had expressed concerns about Zapata's hiring. The Court may not assume that Plaintiff can prove facts not alleged. *Associated General Contractors, Inc.*, 459 U.S. at 526. Any vague associational claims by Plaintiff are without the proper legal or factual support and are therefore dismissed.

**B. Count II: Equal Protection Claim**

In his Amended Complaint, Plaintiff contends that Defendant's actions against Isaiah were "without adequate justification," "directed solely at Isaiah," "arbitrary," and in violation of the Equal Protection clause of the Fourteenth Amendment. [Ex. A to Doc. 1, at 8, ¶ ¶ 31, 32.] Absent from Plaintiff's Complaint are any allegations that the actions taken against Isaiah were motivated by any protected category. As such, Plaintiff's claim can only be construed as a "class of one" claim.

The Tenth Circuit recognizes a "class of one" for equal protection analysis in certain circumstances. The paradigmatic "class of one" case is one in which a public official subjects a person to adverse treatment with no conceivable basis for his action other than spite or improper motive unrelated to his official duties. *See, e.g., Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1209 (10th Cir. 2006). The Tenth Circuit has emphasized that the requirement that a plaintiff show that similarly-situated persons were treated differently "is especially important in class-of-one cases." *Id.* at 1212 (internal quotations omitted).

Notably, the standard to which Defendants Griffith and Hooper would hold Plaintiff is premature at the motion-to-dismiss stage. These Defendants allege that Plaintiff must "demonstrate similarity 'in all material respects,' and 'cannot prevail if there is *any* material difference between it and allegedly similarly situated parties that relates to a governmental

11

interest." [Doc. 12, at 4] (citing *Jicarilla*, 440 F.3d 1202).  But *Jicarilla* itself makes clear that such a standard applies at the summary judgment stage, as opposed to the motion to dismiss stage, where the factual record is more thoroughly developed.  *Jicarilla*, 440 F.3d at 1212.  Rather, to state a claim in a "class of one" Equal Protection claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (U.S. 2000).

Plaintiff contends that two factual allegations provide the requisite support for Isaiah's Equal Protection claim.  First, he claims that "Defendant Griffith singled out Isaiah from among many other students that were wearing similar caps at the championship game and were not challenged by Griffith or by any other staff member." [Ex. A to Doc. 1, at ¶ 22.]  Secondly, Plaintiff contends that Defendant Hooper's alleged reduction of Isaiah's playing time in football games also supports his Equal Protection claim.  [Doc. 16, at 6.][3]

It is somewhat hard for the Court to accept that an Equal Protection violation is committed when a school administrator instructs an athlete to remove a hat at a sporting event. Surely the United States Supreme Court in *Olech* did not contemplate students asserting constitutional claims based on such insignificant instructions by their principals, even assuming they were of an arbitrary nature.  Granted, Isaiah was later allegedly falsely accused of physically accosting Defendant Griffith and suspended from an athletic event as well as from school.  But Plaintiff's Equal Protection claims do not extend to these other alleged adverse

---

[3]On their face, Plaintiff's Equal Protection claims appear to only apply with regard to Defendant Griffith and Defendant Hooper.  However, Plaintiff also makes a vague and speculative allegation that Defendant Gallegos "sanctioned" the other Defendants' behavior.  Such an allegation is conclusory and fails to survive the motion to dismiss standard employed by the Court.

actions, as Plaintiff has not pled that similarly-situated student-athletes were not falsely accused of accosting the principal or suspended from athletic events and/or school. This is likely because there was no available pool of similarly-situated comparators who had been involved in a similar exchange with Defendant Griffith or accused of physically accosting him.

Although Plaintiff makes the conclusory statement that Defendants' alleged actions were "without adequate justification," the contents of Plaintiff's Amended Complaint do not support a claim that there was "no rational basis for the difference in treatment" as required by *Olech*. Plaintiff fails to mention whether the other students who were allegedly wearing baseball hats but not asked to remove them were athletes, or more specifically players on Isaiah's team. If the others were not basketball players, there is a rational basis for Defendant Griffith's decision to instruct the removal of *only* Isaiah's hat. Perhaps Defendant Griffith required a more presentable attire for basketball players who were apparently scheduled to play in the championship basketball game that same night.[4]

Second, Plaintiff has failed to state an Equal Protection claim on the basis of any decrease in Isaiah's playing time in football games. Specifically, he has not alleged that Isaiah was treated differently from other similarly-situated players. Although Plaintiff claims that it is "reasonably clear" from "other parts of the complaint" that he was alleging that Isaiah was "singled out to have his participation as an athlete drastically reduced by Defendant Hooper," [Doc. 16, at 6], in reality, Plaintiff's allegations provide tenuous factual support at very best, if any support at all, for a claim that Isaiah was treated differently from other players. And Plaintiff has certainly made no attempt to allege that the other football players on Isaiah's team

---

[4] It is of note that if the other hat-wearers were not basketball players on Isaiah's team, they were also not similarly-situated to Isaiah.

13

were similarly-situated in material respects.

Plaintiff's Equal Protection claims must be alleged with sufficient specificity to avoid being conclusory, *see Hyatt v. Town Lake Lure*, 225 F. Supp.2d 647, 660 (W.D.N.C. 2002), an obstacle that Plaintiff has clearly failed to surmount. To accept Plaintiff's argument that the factual allegations of his Amended Complaint support his Equal Protection claim would be to accept unwarranted inferences for claims not plausible on their face. It appears that Plaintiff's counsel has failed to heed this Court's previous instruction that a plaintiff must "allege *facts* sufficient to show that [he] was treated differently from others who were similarly situated." *See Luciani v. Ingle*, No. CV 06-426 JCH/LFG, at 4-5 (D.N.M 2006) (citing *Gehl Group v. Kolby*, 63 F.3d 1528, 1538 (10th Cir. 1995)).

It is the Court's objective to be mindful of the specific requirements of a "class of one" Equal Protection claim: the Plaintiff must allege *facts* sufficient to show that he was intentionally treated *differently* from others who were *similarly-situated* and that there is *no rational basis* for the difference in treatment. Plaintiff has failed to do so, with regard to either the requested removal of his baseball hat or any decrease in playing time; his Equal Protection claim is therefore dismissed.

## C.  Qualified Immunity Defense

The standard for overcoming an asserted qualified immunity defense is set out more fully above, but essentially, Plaintiff must assert facts which, if true, would constitute a constitutional violation as well as demonstrate that the constitutional right was clearly established. *See supra* Part II.B. Given that Plaintiff's allegations of First Amendment and Equal Protection violations are deficient as a matter of law, he has clearly failed to allege facts which would constitute a constitutional violation if true. Thus, Plaintiff is unable to satisfy the first and most basic

requirement for overcoming a qualified immunity defense.

Under the second prong, it is by no means clearly established that retaliating against a son for the protected speech of his father is a First Amendment violation. To the contrary, the applicable case law establishes otherwise. *See Trujillo*, 377 F. Supp. 2d at 1016. Additionally, there is no clearly established right to don a baseball hat in a school gymnasium or to receive a certain amount of playing time simply because other students, who are not similarly-situated, are wearing hats or granted playing time. Because Plaintiff has failed to meet his qualified immunity burden, the Court hereby dismisses Plaintiff's claims against Defendants in their individual capacity on the basis of qualified immunity, as well as for other reasons stated herein.[5]

## D.  Count III:  Punitive Damages

Because Plaintiff's substantive claims have been dismissed, it follows that his claim for punitive damages found in Count III of his Amended Complaint must also be dismissed. *See, e.g., Legg v. Dellavolpe*, 228 F. Supp. 2d 51, 65 n.5 (D. Conn. 2002); *Johnson v. Quality Mfg.*, No. 05-CV-1867 (PJS/JJG), 2007 U.S. Dist. LEXIS 34201, at *33 (D. Minn. May 9, 2007).

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Griffith and Hooper's Motion to Dismiss, filed December 17, 2007 [Doc. 11], and Defendant Gallegos' Motion to Dismiss, filed January 1, 2008 [Doc. 20], are hereby **GRANTED**, and that Plaintiff's claims in Counts I, II,

---

[5] Any claims against Defendants in their official capacities are likewise disposed of upon the dismissal of Counts I and II of Plaintiff's Amended Complaint. Official capacity claims against an individual are simply another way of stating a claim against the entity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In order to state a claim against Defendants in their official capacity, Plaintiff must allege facts which, if true, would constitute a constitutional violation as well that a policy of the entity - here the school district - was the moving force behind the violation. *See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998). Given the dismissal of Counts I and II, Plaintiff cannot be said to have alleged facts which would constitute a constitutional violation, nor has he alleged that a policy of the school district was the moving force behind any violation.

and III of his Amended Complaint are **DISMISSED WITH PREJUDICE.**

Dated this 16th day of July 2008.

_____
UNITED STATES DISTRICT JUDGE